**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEPHANIE PURIFOY-HARVEY, as Executrix of the Estate of ERNESTINE T. JOHNSON, deceased<br><br>**Plaintiff,**<br>vs.<br><br>WYM OP HOLDINGS, LLC d/b/a WYOMISSING HEALTH AND REHABILITATION CENTER;<br><br>and<br><br>PREMIER HEALTHCARE, LLC a/k/a PREMIER HEALTHCARE MANAGEMENT, LLC;<br><br>and<br><br>NEW PREMIER MANAGEMENT, LLC;<br><br>and<br><br>YOSEF GERSON;<br><br>and<br><br>AHARON BLEIER;<br><br>and<br><br>CHRISTOPHER M. TROUTMAN, NHA<br><br>**Defendants.** | CIVIL ACTION<br><br>NO.  5:24-cv-06449-JMG<br><br>REMOVED FROM THE COURT OF COMMON PLEAS OF PENNSYLVANIA, PHILADELPHIA COUNTY, No. 241100467 |

| NOTICE | AVISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court** | **Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en** |

1

your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyers Referral & Information Services**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**Telephone (215) 238-6333**
**TTY: (215) 451-6197**

persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asoclacion De Licenclados**
**De Filladelfla**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filladelfla, Pennsylvania 19107**
**Telephone (215) 238-6333**
**TTY: (215) 451-6197**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE PURIFOY-HARVEY, as Executrix of the Estate of ERNESTINE T. JOHNSON, deceased | CIVIL ACTION |
| **Plaintiff,** | NO.  5:24-cv-06449-JMG |
| vs. | REMOVED FROM THE COURT OF COMMON PLEAS OF PENNSYLVANIA, PHILADELPHIA COUNTY, No. 241100467 |
| WYM OP HOLDINGS, LLC d/b/a WYOMISSING HEALTH AND REHABILITATION CENTER; | |
| and | |
| PREMIER HEALTHCARE, LLC a/k/a PREMIER HEALTHCARE MANAGEMENT, LLC; | |
| and | |
| NEW PREMIER MANAGEMENT, LLC; | |
| and | |
| YOSEF GERSON; | |
| and | |
| AHARON BLEIER; | |
| and | |
| CHRISTOPHER M. TROUTMAN, NHA | |
| **Defendants.** | |

## AMENDED COMPLAINT IN CIVIL ACTION
(The Amended Complaint includes a Medical Professional Liability Action)

AND NOW, comes the Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of

Ernestine T. Johnson, deceased, by and through counsel, McEldrew Purtell, Esquire, files the

instant Amended Complaint in Civil Action, and in support thereof avers the following:

## I.    PARTIES

### A.    Plaintiff

1.    Ernestine T. Johnson (sometimes referred to herein as "Ms. Johnson") was an adult individual and was a resident of WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center (hereinafter "the Facility"), from approximately, January 13, 2022, through July 20, 2023, except for intermittent hospitalizations.

2.    Ms. Johnson died on July 20, 2023.

3.    Plaintiff Stephanie Purifoy-Harvey is an adult individual residing at 2821 Moores Plains Blvd., Upper Marlboro, MD 20774-8067.

4.    Plaintiff Stephanie Purifoy-Harvey, daughter of Ernestine T. Johnson, was appointed Executrix of the Estate of Ernestine T. Johnson on July 17, 2024, by the Register of Wills of Berks County, Pennsylvania.

### B.    Defendants, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, New Premier Management, LLC, Yosef Gerson, Aharon Bleier, and Christopher M. Troutman, NHA ("Defendants")

5.    Defendant, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, is a domestic limited partnership, duly licensed, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with offices and a place of business located at 1000 East Wyomissing Blvd., Reading, PA 19611.

6.    Defendant, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, is engaged in the business of owning, operating and/or managing nursing homes, including WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia and Berks County, Pennsylvania; and was at all times material hereto, duly

4

licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things within the Amended Complaint, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ernestine T. Johnson and in the operation of the Facility.

7.      Defendant Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, is a foreign limited liability company, duly licensed, organized and existing under and by virtue of the laws of the State of New York, with a Registered Agent identified as Highfield Gardens, located at 199 Community Dr., Great Neck, NY 11021.

8.      Defendant Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia and Berks County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things within the Amended Complaint, for the acts and omissions of itself, its agents, employees, servants,

contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ernestine T. Johnson and in the operation of the Facility.

9.    Defendant New Premier Management, LLC, is a foreign limited liability company, duly licensed, organized and existing under and by virtue of the laws of the State of New York, upon belief, with a place of business located at 1413 38th St., Brooklyn, NY 11218.

10.    Defendant New Premier Management, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia and Berks County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things within the Amended Complaint, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ernestine T. Johnson and in the operation of the Facility.

11.    Defendant, Yosef Gerson, is an individual, upon information and belief, who was at all times material hereto, an owner and/or officer of the entities identified herein. Upon belief, Yosef Gerson has offices, a place of business and/or resides at 4 Grant Ave., Lakewood, NJ 08701.

12.    Defendant, Yosef Gerson, is engaged in the business of owning, operating and/or managing nursing homes, including WYM Op Holdings, LLC d/b/a Wyomissing Health and

Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia and Berks County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding himself and his agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally and vicariously liable, for the acts and omissions of himself, his agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ernestine T. Johnson and in the operation of the Facility.

13.     Defendant, Aharon Bleier, is an individual, upon information and belief, who was at all times material hereto, an owner and/or officer of the entities identified herein. Upon belief, Aharon Bleier has offices, a place of business and/or resides at 52 Whispering Pines Ln., Lakewood, NJ 08701.

14.     Defendant, Aharon Bleier, is engaged in the business of owning, operating and/or managing nursing homes, including WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia and Berks County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding himself and his agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally and

vicariously liable, for the acts and omissions of himself, his agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ernestine T. Johnson and in the operation of the Facility.

15.     Christopher M. Troutman, NHA, is an adult individual, Pennsylvania citizen, residing at 23 E. 6th St., Apt. 4, Pottstown, PA 19464-5200.  Upon information and belief at all relevant times herein, Christopher M. Troutman was the licensed Nursing Home Administrator of the facility during the residency of Ernestine T. Johnson, as well as a member of the Governing Body, and is therefore personally, jointly and vicariously liable, among other things, for the acts and omissions of herself (including failure to establish and implement policies regarding the management and operation of the facility) and his agents, employees, servants, contractors, staff, and/or partners and all other Defendants, played a role in the care provided to Ernestine T. Johnson, and in the operation of the facility. Christopher M. Troutman's conduct forms a significant basis for the claims asserted herein and from whom Plaintiff seeks significant relief.

16.     At all times material hereto, Defendants individually and collectively owed duties indicated within this Amended Complaint, some of which were non-delegable, to the residents of the Facility, including Ernestine T. Johnson, such duties being conferred by statue, existing at common law, and/or being voluntarily assumed by each Defendant.

17.     At all times material hereto, Defendants individually and collectively, and/or through a joint venture, owned, operated, managed and controlled the Facility, and are individually and collectively engaged in the business of providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

## II.      JURISDICTION AND VENUE

8

18.    Jurisdiction and venue are proper in this Honorable Court in Philadelphia and Berks County, Pennsylvania, insofar as Defendants regularly conduct business in this county, the cause of action arose in this county and/or the action is being brought in any county which venue may be laid against any defendant.  See Pa.R.C.P. 1006 and 2179. Moreover, complete diversity of the parties is lacking given that some of the Defendants are Pennsylvania Defendants

19.    Jurisdiction is improper in the United States District Court for the Eastern District of Pennsylvania given that complete diversity of the parties does not exist. However, Plaintiff's Complaint was removed to this Honorable Court on the basis of complete diversity. Thus, Plaintiff must file this Amended Complaint with this Honorable Court pursuant to Fed. R. Civ. P. 15(a)(1)(B) as Defendant New Premier Management, LLC has filed an Answer and Affirmative Defenses to Plaintiff's Complaint and Plaintiff has not yet filed his Motion to Remand at the time of the filing of this Amended Complaint.

### III.    FACTUAL BACKGROUND

#### A.    Conduct of the Defendants

20.    Ernestine T. Johnson was a resident of the Facility from approximately, January 13, 2022, through July 20, 2023, except for intermittent hospitalizations.[1] Ms. Johnson died on July 20, 2023.

21.    Ernestine T. Johnson required reliable assistance and skilled care in order to complete her activities of daily living which necessitated her admission to Defendants' Facility.

22.    In exchange for financial consideration, and pursuant to the admission contract, Ernestine T. Johnson was admitted to the Facility in order to obtain and be provided with that assistance.

---

[1] Plaintiff is not bringing any claim pursuant to Pa. St. 62 P.S. § 1407(c), and nothing in this Complaint should be interpreted as an attempt to recover damages pursuant to that statute.

23. Moreover, Defendants were required by their provider agreements to ensure that they provided for all of Ernestine T. Johnson's care needs.

24. The Defendants, through advertising and marketing of the Facility to local hospitals and other providers, held themselves out as capable of providing the level of care required by sick, elderly and frail individuals like Ernestine T. Johnson, through a number of services including medical, skilled nursing, occupational therapy, physical therapy, speech therapy and daily custodial care.

25. When Defendants agreed to admit Ernestine T. Johnson, they assumed the obligation of providing for her total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy, and daily custodial care, including hygiene.

26. Defendants exercised complete and total control over the healthcare of all the residents of the Facility, including Ernestine T. Johnson.

27. At all times material hereto, Defendants were vertically integrated organizations that were controlled by their respective members and/or boards of directors, who were responsible for the operation, planning, budgeting, management, and quality control of the Facility.

28. The control exercised over the Facility by the Defendants included: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the Facility Administrator and Director of Nursing; supervision and oversight of the staff; credentialing of physicians who saw patients in the Facility; development and implementation of nursing staff in-services; development and implementation of all pertinent policies and procedures; monitoring customer satisfaction via surveys; performing mock surveys through use of regional and local employees; risk management; corporate and

10

regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; setting guidelines in place that controlled whether or not residents were discharged based on certain clinical condition criteria; development and implementation of reimbursement strategies; retaining contract management, physician therapy and dietary services; dictating census and payor source quotas for admission to the Facility; and employing Facility-level, regional, and corporate staff who together operated the Facility.

29.    Defendants monitored the care being provided at their nursing homes, including the Facility, by and through their respective members, managers, regional personnel, board of directors and corporate officers, who did so by utilizing Department of Health Survey Results, Customer Satisfaction Surveys, Mock Surveys, internal quality indicator reports, and CMS Quality Indicator Reports.

30.    Defendants exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of their nursing homes, including the Facility.

31.    Defendants had the duty and responsibility to establish policies and procedures that addressed the clinical and daily needs of the residents of the Facility, including Ernestine T. Johnson.

32.    Defendants had the duty and responsibility to ensure that those policies and procedures were implemented.

33.    Defendants had the duty and responsibility to ensure those policies and procedures addressed the needs of the residents of the Facility, which included Ernestine T. Johnson. This includes policies and procedures addressing the recognition and/or treatment of Ernestine T.

Johnson's medical conditions, so as to ensure that timely and appropriate care was provided for these conditions whether at the Facility or obtained from other medical providers.

34.     Defendants, acting through their Administrators, members, managers, board of directors and corporate offices, had the duty and responsibility to oversee the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

35.     Defendants had a duty to employ competent, qualified and trained staff so as to ensure that proper care, treatment, and services were provided to all residents of the Facility, including Ernestine T. Johnson.

36.     Defendants had a duty and responsibility to ensure that the Facility and its residents, including Ernestine T. Johnson, were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of their medical, nursing, and/or custodial needs whether within the Facility or from other medical care providers.

37.     Knowing that staffing costs were the largest part of their nursing homes' budgets, Defendants chose to operate and/or manage the Facility to maximize their revenue at expense of the care provided to their residents, including Ernestine T. Johnson, by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Ernestine T. Johnson.

38.     Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite complaints of insufficient staffing from staff members, residents and their families, Defendants recklessly and/or negligently disregarded the consequences of their actions, and/or negligently caused staffing levels at the Facility to be set at a level that did not allow staff to sufficiently meet the needs of the residents, including Ernestine T. Johnson.

39.    Defendants knew that residents with greater health problems and higher acuity are a source of higher reimbursement rates, from governmental programs including Medicare, because of their complex medical needs.

40.    Upon present information and belief, such reimbursements from governmental programs, including Medicaid and Medicare, are Defendants primary source of income.

41.    Possessing this knowledge, Defendants intentionally increased the numbers of residents at the Facility with higher acuity and complex medical needs.

42.    Defendants knew, or should have known, that this increase in the acuity and care needs for the residents would significantly increase the need for additional staff, services, resources and supplies necessary to provide these residents with adequate care and meet their needs, including Ernestine T. Johnson.

43.    Despite the knowledge of the increased needs for additional staff because of the increased acuity levels of the Facility residents, including Ernestine T. Johnson, Defendants knowingly disregarded those acuity levels and knowingly established staffing levels that created recklessly high resident to nurse ratios and recklessly high resident to certified nurse aide ratios.

44.    Defendants knowingly disregarded the increased resident acuity levels and the increased time required by the staff to provide activities of daily living, medications, and treatments.

45.    The acts and omissions of the Defendants were motivated by a desire to decrease the costs and increase the revenue of their nursing homes, including the Facility.

46.    Defendants accomplished these goals by knowingly and recklessly reducing the expenditures for needed staffing, training, care and supplies, at the expense of the healthcare of

the residents and despite the knowledge that this cost-cutting would inevitably lead to severe injuries, such as those suffered by Ernestine T. Johnson.

47.    The aforementioned acts and omissions directly caused injury to Ernestine T. Johnson and were known to the Defendants.

48.    Defendants knowingly sacrificed the quality of care received by all residents, including Ernestine T. Johnson, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries suffered by Ernestine T. Johnson, as described herein, which included multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

49.    At the time and place of the incidents hereinafter described, the Facility whereupon the incidents occurred was individually, collectively, and/or through joint venture, owned, possessed, controlled, managed, operated and maintained under the exclusive control of the Defendants.

50.    At all times material hereto, the Defendants were operating personally or through their agent, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

51.    The aforementioned incidents were caused solely and exclusively by reason of the negligence, carelessness and recklessness of the Defendants, their agents, servants, contractors,

14

subcontractors, staff and/or employees and was due in no part to any act or failure to act on the part of Ernestine T. Johnson.

52.    Defendants, their agents, servants, contractors, subcontractors, staff and/or employees are/were, at all times material hereto, licensed professionals/professional corporation and/or businesses and the Plaintiff is asserting professional liability claims against them.

53.    In addition to all other claims and demands for damages set forth herein, Plaintiff is asserting claims for ordinary negligence, custodial neglect and corporate negligence against the Defendants herein, as each of the entities named as Defendants herein are directly and vicariously liable for their independent acts of negligence, for their acts of general negligence, and for their acts of general corporate negligence.

## B.    Injuries of Ernestine T. Johnson at the Facility

54.    Upon admission to the Facility and during the relevant time period, Ernestine T. Johnson was dependent upon the staff for her physical, mental, psycho-social, medical nursing and custodial needs, requiring total assistance with activities of daily living, and she had various illnesses and conditions that required evaluation and treatment.

55.    Defendants knew or should have known that Ernestine T. Johnson was at risk for a multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

15

56.    Defendants continuously engaged in a pattern of care replete with harmful and injurious commissions, omissions, and neglect as described herein.

57.    Defendants, through their acts and omissions, deprived Ernestine T. Johnson of adequate care, treatment, food, water and medicine and caused her to suffer a multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

58.    As a result of the severity of the negligence Defendants inflicted upon Ernestine T. Johnson, the deterioration of her health and physical condition was negligently accelerated and resulted in both physical and emotional injuries, a loss of dignity, degradation, emotional trauma, severe pain, suffering and mental anguish, and unnecessary hospitalizations.

59.    Ernestine T. Johnson was admitted to Defendants' Facility on or about January 13, 2022, for rehabilitation and skilled care.

60.    Prior to admission to the Facility, from December 27, 2021, through January 13, 2022, Ms. Johnson was treated at Reading Hospital for failure to thrive and inability to ambulate. Upon evaluation, she had a right acetabuli protrusion and underwent revision surgery (right hip arthroplasty). Also, during hospitalization, she was diagnosed with malnutrition related to acute illness or injury and she was found to have a urinary tract infection and COVID.

61.    Ms. Johnson's medical history also included diabetes melitus-2, hypertension, anxiety, muscle wasting and atrophy, acidosis, protrusion acetabuli, protein-calorie malnutrition,

16

Alzheimer's, status post right hip arthroplasty, acute posthemorrhagic anemia, calculus of kidney, cystitis, dementia, diarrhea, difficulty walking, dysphagia, esophageal obstruction, hypokalemia, long term use of antithrombotic/platelets, lack of coordination, right hip pain, history of COVID, history of peptic ulcer, history of TIA and cerebral infarction without residual deficits, atherosclerosis, hydronephrosis, and unspecified intestinal obstruction.

62.     Upon admission to the Facility, on January 13, 2022, Ms. Johnson was receiving medication to control her pain.

63.     On January 17, 2022, a nutrition progress note documented that Ms. Johnson was totally dependent for feeding and that she had a diagnosis of dysphagia, malnutrition, diabetes and hypertension. Further, she had no pressure areas, weighed 109.6. lbs. and was to receive 120ml of resource three times a day for nutritional support.

64.     On January 18, 2022, she was assessed by a Physician Assistant who noted that Ms. Johnson had been placed on Keflex by orthopedics due to her wound being warm to touch previously. At that time, the wound was dehisced and had purulent drainage. It was covered with clean mepliex to decrease the patient touching the wound and scratching it open even more. The wound is no longer approximated in the inferior portion of the surgical wound and was warm to the touch. Orthopedic was contacted for further decision and a possible sooner than the follow up visit scheduled for February. Ms. Johnson was referred to wound care, and a CBC and wound culture were to be completed. Additionally. Steri-strips were placed on the wound to assist with approximation and closure.

65.     On January 19, 2022, lab results showed Ms. Johnson had low levels of RBC (3.44), Hemoglobin (10.3), Hematocrit (34.0), and MCHC (30.3), and a high level of RDW (18.4).

66.     On January 20, 2022, she had a Braden Scale score of 9, indicating Ms. Johnson was at very high risk for developing pressure ulcers.

67.     On January 23, 2022, Ms. Johnson was placed on Keflex three times a day for ten days for right hip wound infection.

68.     On January 24, 2022, and January 28, 2022, a culture returned showing no polymorphonuclear leukocytes and with Rare squamous epithelial cells and rare gram-positive cocci in clusters. Further 2+ possible mixed gram-positive organisms and 1+ enterococcus faecium.

69.     On January 26, 2022, and MDS progress note documented that Ms. Johnson was alert with clear speech but her vision was impaired with no glasses. Her hearing was adequate with no hearing appliance. However, her ability to understand others was noted to be sometimes and her ability to express what she wants was noted to be sometimes.

70.     The same day, she had a fair appetite and was medicated for pain.

71.     On January 27, 2022, she had a Braden Scale score of 8, indicating very high risk of skin breakdown.

72.     The same day, she suffered a pain level of 7 and he had increased agitation trying to get out of bed with pain in her legs.

73.     On January 30, 2022, she was tolerated small amounts of food with sips of fluids, and her right hip incision continued to drain serosanguineous fluid.

74.     On February 1, 2022, she weighed 112.8 lbs., and she was tolerating meals and fluids.

75.     On February 8, 2022, Ms. Johnson's son reported a burgundy fleece jacket and white, fleece blanket missing from Ms. Johnson's room.

76. On February 9, 2022, Ms. Johnson tolerated therapy without difficulty and small amounts of meals and fluids.

77. The same day, Ms. Johnson's orthopedic appointment for February 10, 2022, was canceled due to no transportation scheduled nor available for the following day. Later, the appointment was rescheduled for February 17, 2022, and transportation was scheduled.

78. On February 15, 2022, Ms. Johnson was assessed by the physician as "pleasantly confused but comfortable after starting her on Oxycodone for pain wound healed with antibiotic appetite improving g[a]in weight from 109 to 112 lbs. son want her home but pt need 24-hour care and 2 assist and Hoyer lift." Her right hip was noted to be improving and she was on nutritional supplement three times a day and Rameron.

79. On February 28, 2022, Ms. Johnson's son visited and Ms. Johnson was noted to be quiet, withdrawn, not taking foods or fluids well orally, and she complained of a sore throat. Further, Ms. Johnson's son was concerned about Ms. Johnson's hip wound infection returning and requested that she be assessed by the physician.

80. On March 1, 2022, Ms. Johnson was assessed by the physician at the request of the unit manager because of a sudden change in condition. She exhibited poor oral intake, was lethargic, had abdominal pain and a new open sacral wound. The Physician ordered x-rays of Ms. Johnson's abdomen due to abdominal pain. However, due to timing of x-ray availability, Ms. Johnson's hard abdomen, and her poor oral intake, Ms. Johnson was to be sent to Reading Hospital ER for evaluation. Further, Ms. Johnson was put on Arginaid for her sacral wound.

81. The same day, Ms. Johnson weighed 107.4 lbs. which was an unplanned significant weight loss of 4.8% in 1 month.

82.     Also on March 1, 2022, Ms. Johnson was admitted to Reading Hospital for bowel obstruction.

83.     During hospitalization, Ms. Johnson underwent laparotomy with internal hernia reduction and was put on TPN due to frailty and malnutrition.

84.     Upon information and belief, during hospitalization, Ms. Johnson was placed on IV fluids for dehydration.

85.     Further, during hospitalization, she was diagnosed with intestinal adhesions, severe protein-calorie malnutrition, hyperosmolality, hypernatremia, acidosis, dehydration, hypovolemia, hypokalemia, volvulus, anemia, ascites, disorders of phosphorus metabolism, and BMI 23-23.9 adult.

86.     On March 14, 2022, upon readmission, she had a midline incision through her umbilical area with 12 staples which would require removal in one week. She had a healed incision to right hip, a wound on her wrist with purulent drainage and two open areas to her sacrum.

87.     The same day, she weighed 113 lbs. which was an increase of 5.2% from discharge weight.

88.     On March 16, 2022, Wound Healing Solutions assessed Ms. Johnson for follow-up management for an open area to the sacrum noted on March 1, 2022. At that time, Ms. Johnson's sacrum skin impairments were resolved.

89.     On March 18, 2022, Ms. Johnson's abdomen was round and hard upon physician assessment. She was started on Colace BID. Additionally, her pain medication Oxycodone was discontinued and she was started on Tramadol prn.

90.     On March 19, 2022, she was alert with confusion and ate 25%.

20

91. On March 20, 2022, Ms. Johnson consumed 100% of her supplemental drink and was medicated for pain.

92. On March 21, 2022, her sutures were removed.

93. On March 23, 2022, she weighed 108.6 lbs., and she tolerated small amounts of fluids and meals.

94. On March 29, 2022 (report dated March 30, 2022), Wound Healing Solutions assessed Ms. Johnson for evaluation and management of an unstageable right heel wound that measured 4.5 x 4.3 x 0.0 cm, with purple/maroon localized area of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration. Further, the right heel wound had an "[u]nkown date of onset, but a DTI of the right heel was noted on 3/14/22 readmission assessment s/p hospitalization."

95. On March 31, 2022, she had a stage 2 left buttock wound measuring 1.5 x 1.0 cm, a stage 3 right buttock wound measuring 3 x 1 cm with 90% granulation tissues, 10% slough, a right heel DTI measuring 5 x 3 cm, and a left heel DTI measuring 5 x 3 cm.

96. On April 1, 2022, Ms. Johnson's right heel wound measured 4.5 x 4.3 x 0.0 and was noted to have been present upon readmission on March 14, 2022.

97. On April 3, 2022, Ms. Johnson complained of whole body pain.

98. On April 4, 2022, she weighed 106.2 lbs. which was an unplanned 6% decrease in 1 month.

99. On April 4, 2022, and April 5, 2022, Ms. Johnson tolerated small amounts of food, and on April 6, 2022, it was documented that she had a fair appetite.

100. On April 6, 2022, Wound Healing Solutions assessed Ms. Johnson's right heel wound as a full thickness wound, measuring 3.5 x 5.0 x 0.0 cm with purple/maroon localized area

of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration, and was status stable.

101. On April 8, 2022, her left heel had a stage 2 wound measuring 2.5 cm x 2 cm. The left heel wound was further noted to have been present upon readmission.

102. On April 10, 2022, Ms. Johnson was documented as requiring assistance of 1 for ADLS and assistance of 2 for transfers and hoyer lift.

103. On April 11, 2022, a Referral from Rehabilitation to Functional Maintenance form documented that Ms. Johnson was to be out of bed for meals, slow rate, head of bed elevated, alternate food and liquids, and she needed encouragement to drink liquids, and assistance of one and cues for participation.

104. On April 12, 2022 (report dated April 13, 2022), Wound Healing Solutions assessed Ms. Johnson's right heel wound as a full thickness wound, measuring 4.0 x 4.0 x 0.0 cm with purple/maroon localized area of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration, and was status stable. Further, the left heel had no ulcerations at that time.

105. On April 19, 2022, Wound Healing Solutions assessed Ms. Johnson's right heel wound as a full thickness wound, measuring 4.0 x 4.0 x 0.0 cm with purple/maroon localized area of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration, and was status stable.

106. On April 26, 2022, Wound Healing Solutions assessed Ms. Johnson's right heel wound as a full thickness wound, measuring 4.3 x 4.0 x 0.0 cm with purple/maroon localized area of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration, and was status stable.

107. The same day, Ms. Johnson's daughter, Stephanie Harvey, and Ms. Harvey's attorney attempt to contact Ms. Johnson regarding having a guardianship put in place.

108. On April 27, 2022, a zoom meeting was held with resident present in resident's room per "WNRC Corporate" clearance to allow meeting and a resident facesheet was emailed to Ms. Harvey's Attorney, Abigel B. Watson, Esquire.

109. On April 28, 2022, Ms. Johnson suffered an unwitnessed fall. She was found laying on floor next to her bed. Upon assessment, she was noted with pain to the touch to her right lower extremity, facial grimacing and being tensed. She was assisted back to bed via mechanical lift and neuro checks were initiated. X-rays of the right hip were ordered and returned negative.

110. On April 29, 2022, IDT reviewed Ms. Johnson and documented that Ms. Johnson had been found next to her bed with the covers on and that her care plan was updated to include bolsters on her bed for safety.

111. On May 2, 2022, Ms. Johnson suffered a pain level of 6/10.

112. On May 3, 2022 (report dated May 4, 2022), Wound Healing Solutions assessed Ms. Johnson's right heel wound as a full thickness wound, measuring 4.3 x 4.0 x 0.0 cm with purple/maroon localized area of discolored intact skin, wound edges adherent to the base, no drainage, periwound without erythema, crepitus, edema or induration, and was status stable.

113. The same day, nutrition progress notes documented Ms. Johnson with varied meal intake between 25-75% and a weight of 100lbs. which was a decrease of 5.8% in 1 month. The Plan of Care included increasing her Resource supplement to 4 times a day to assist in meeting needs, and to improve oral intake to increase body weight.

114. On May 10, 2022 (report dated May 11, 2022), Wound Healing Solutions assessed Ms. Johnson with the following:

a. Scattered areas of denudement and full-thickness erosions noted throughout the perisacral areas. Moderate nonodorous serosanguineous drainage. Periwound without erythema, crepitus, edema or induration. Noted to be MASD with denudements along the sacrum.

b. Full thickness wound of the right heel, 4.3 x 3.5 x 0.0cm. Purple/maroon localized area of discolored intact skin. Wound edges adherent to the base. No drainage. Periwound without erythema, crepitus, edema or induration. Status: smaller this week.

115. On May 12, 2022, Ms. Johnson's son requested that Ms. Johnson sit up in her chair more often and due to her sacral wound, it was recommended that she be assessed for a donut cushion to her chair.

116. On May 17, 2022 (report dated May 18, 2022), Wound Healing Solutions assessed Ms. Johnson's as follows:

a. scattered areas of denudement and a few full-thickness erosions to her peri sacral area with small non-odorous serosanguineous drainage and the periwound was without erythema, crepitus, edema or induration. Status: General improvement this week.

b. Full thickness wound of the right heel, 2.5 x 3.5 x 0.0cm. Purple/maroon localized area of discolored intact skin. Wound edges adherent to the base. No drainage. Periwound without erythema, crepitus, edema or induration. Status: smaller this week.

117. On May 19, 2022, Ms. Johnson was assessed by Kirah Iovanna, RMHNP as pleasantly confused, unable to answer open ended questions appropriately due to severe impaired

cognition, easily distracted, mumbled speech, and makes random and irrelevant statements throughout the exam. She had fair/poor appetite, remained compliant with meds and cooperative with care.

118. On May 30, 2022, she suffered a pain level of 8/10 and 9/10.

119. On June 1, 2022, Wound Healing Solutions assessed Ms. Johnson's as follows:

    a. Full thickness erosion of the sacrum measuring 5.0 x 1.0 x 0.3 cm with wound base 100% granular, moderate nonodorous serous drainage. Periwound without erythema, crepitus, edema, or induration. Status: improved, no slough

    b. Full thickness wound of the right heel – resolved.

120. On June 3, 2022, nursing staff requested wound treatments to right and left buttock be discontinued as she does not have wounds to these areas. Further, she has a wound to sacrum and there is another treatment in place for the sacral area.

121. The same day, she suffered a pain level of 6/10.

122. On June 4, 2022, Ms. Johnson's son reported that he was informed that Ms. Johnson was staying up all night, talking and singing. Nursing staff recommended placing Ms. Johnson on Metatomin.

123. On June 7, 2022, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a full thickness wound measuring 6.2 x 1.0 x 0.3 cm, with 100% granular wound base, moderate nonodorous serous drainage, periwound without erythema, crepitus, edema or induration. Status: stable.

124. On June 13, 2022, Ms. Johnson suffered another unwitnessed fall. She was found lying on her right side on the floor in her room. She was unable to explain what happened. No injuries were noted and she was able to move all extremities without extreme pain. Later the same

day, nursing progress notes documented that Ms. Johnson had slid off her bed and was found on her side with her back towards her bed.

125.    On June 14, 2022, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a full thickness wound measuring 5.0 x 0.6 x 0.3 cm, with 100% granular wound base, moderate nonodorous serous drainage, periwound without erythema, crepitus, edema or induration. Status: stable.

126.    On June 15, 2022, Ms. Johnson ate 0% of her breakfast, but ate all of her lunch and drank 100% of resource drink.

127.    On June 16, 2022, Ms. Johnson weighed 99.4 lbs. which was a 12% decrease in 3 months but stable for 1 month.

128.    On June 21, 2022, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a full thickness wound measuring 5.5 x 1.0 x 0.3 cm, with 100% granular wound base, moderate nonodorous serous drainage, periwound without erythema, crepitus, edema or induration. Status: stable.

129.    On July 11, 2022, a wound consultation progress note documented by Nop Williams, CRNP, documented Ms. Johnson's wounds as follows: "Skin/Chest: Sacral /heel wound Wound: Site: Sacral R heel Type of Wound: Pressure. PVD Current Treatment: Calcium Alginate QDStage: US. NA Length in cm: 4.2 cm 2.0 cm Width in om: 2.0 cm 2.5 cm Depth in cm: 0.5 cm Wound Base and Edges: Nonviable tissue Eschar Drainage Type/Amount: Small serous. NA Peri Wound Condition: Maceration, moderate. intact Offloading: APM/heel lift boots."

130.    On July 18, 2022, a wound consultation progress note documented by Nop Williams, CRNP, documented Ms. Johnson's wounds as follows: "Sacral R heel Type of Wound: Pressure, PVD Current Treatment: Calcium Alginate QDStage: US. NA Length in cm: 3.8 cm 2.0

26

cm Width in cm: 2.0 cm 2.5 cm Depth in cm: 0.5 cm Wound Base and Edges: 20% gran/80% Nonviable tissue Eschar Drainage Type/Amount: Small serous. NA Perl Wound Condition: Maceration, moderate. Intact Offloading: APM/heel lift boots."

131.    On July 19, 2022, Ms. Johnson had two episodes of loose stools. She was pre-medicated with Tramadol for wound care to her sacrum. She was repositioned from side to side for offloading pressure. Additionally, she ate 50% for breakfast and 25% lunch fed by staff and 100% of her supplement.

132.    On July 25, 2022, a wound consultation progress note documented by Nop Willians, CRNP, documented Ms. Johnson's wounds as follows: "impairment Skin / Chest: Sacral /heel wound Wound: Site: Sacral R heel Type of Wound: Pressure. PVD Current Treatment: Calcium Alginate QDStage: US. NA Length in cm: 3.0 cm 2.0 cm Width in cm: 2.0 cm 2.0 cm Depth In cm: 0.5 cm Wound Base and Edges: 75% granulation Eschar 25% yellow slough Drainage Type/Amount: Small serous. NAPeri Wound Condition: Maceration, mild Intact Offloading: APM/heel lift boots."

133.    The same day, Ms. Johnson was noted to be yelling in pain and was very warm after treatment. She had a temperature of 101.4.

134.    On July 26, 2022, Occupational Therapy program instructions included that Ms. Johnson required assistance of one for self-feeding, "TD meal and min A for beverages," and encouragement to get out of bed for 2-4 hours in her geri-recliner with padding, lateral supports and ROHOO cushion.

135.    The same day, Ms. Johnson suffered pain and was calling out. When nursing staff asked her what was wrong, she stated "Oh mommy I have pain." But, she was unable to tell the nurse what hurt. Additionally, she was noted to have a dry cough with temperature.

27

136. On July 28, 2022, she was medicated for a temperature of 101.1 temporal and displaying signs and symptoms of pain and discomfort.

137. On July 29, 2022, she suffered pain and was noted to be restless and awake most of the night, yelling out random things and moaning in pain. She continued with a temperature of 102.

138. On August 1, 2022, her wounds were documented as follows:

   a. Upon belief, the sacral wound was unstageable and measured 3.0 cm x 2.0 cm x 1.0 cm.

   b. Upon belief, the right heel, PVD, measured 2.0 cm x 2.0 cm.

139. The same day, Ms. Johnson's son reported that Ms. Johnson had suffered loose stools the day before, July 31, 2022, that were clay colored.

140. On August 2, 2022, she was again noted with clay-colored loose stools x 2 and a CMP was ordered.

141. On August 3, 2022, Ms. Johnson complained of pain when being moved in bed.

142. On August 6, 2022, Ms. Johnson suffered an unwitnessed fall. She was found laying on the floor on her back aside of her bed. No injuries were noted, but later, Ms. Johnson was noted with redness and swelling to the left side of her face. Ms. Johnson's son requested that Ms. Johnson not be sent out to the hospital unless her condition changed.

143. On August 8, 2022, her wounds were documented as follows:

   a. Upon belief, the sacral wound was unstageable and measured 2.5 cm x 0.8 cm x 0.8cm.

   b. Upon belief, the right heel, PVD, measured 1.5 cm x 1.5 cm.

144.    The same day Ms. Johnson had a temperature of 99.1 and her sacral was noted to be improving.

145.    On August 10, 2022, Ms. Johnson was not swallowing food and she had a temperature of 101.8.

146.    On August 15, 2022, her wounds were documented as follows:

a.  Upon belief, the sacral wound was unstageable and measured 2.3 cm x 0.8 cm x 0.5 cm.

b.  Upon belief, the right heel, PVD, measured 1.5 cm x 1.5 cm.

147.    On August 22, 2022, she had a temperature of 100.5.

148.    On August 23, 2022, lab results revealed Ms. Johnson had high levels of WBC (11.2), platelets (447), IMM Gran Number (.04), and glucose (147), and low levels of Hemoglobin (11.8), MCHC (30.3), BUN Creatinine (0.56), and Albumin (2.9).

149.    On August 29, 2022, her wounds were documented as follows:

a.  Upon belief, the sacral wound was unstageable and measured 2.3 cm x 0.8 cm x 0.5 cm.

b.  Upon belief, the right heel, PVD, measured 1.5 cm x 1.5 cm.

150.    On September 1, 2022, she weighed 87.6 lbs.

151.    On September 12, 2022, her wounds were documented as follows:

a.  Upon belief, the sacral wound was unstageable and measured 4.0 cm x 0.8 cm x 0.5 cm.

b.  Upon belief, the right heel, PVD, measured 1.5 cm x 1.0 cm.

152.    On September 19, 2022, Ms. Johnson had an open wound to her right foot.

153.    The same day, her wounds were documented as follows:

   a.  Upon belief, the sacral wound was unstageable and measured 3.5 cm x 0.8 cm

       x 0.5 cm.

   b.  Upon belief, the right heel, PVD, measured 1.5 cm x 0.5 cm.

154.  On September 26, 2022, her wounds were documented as follows:

   a.  Upon belief, the sacral wound was unstageable and measured 3.5 cm x 0.8 cm

       x 0.5 cm with undermining of 1-2.5 cm.

   b.  Upon belief, the right heel, PVD, measured 1.5 cm x 1.0 cm.

155.  On September 27, 2022, a Nursing Communication to Rehab form documented Ms. Johnson with a weight loss of "-11.9% in 3 mo" and her dysphagia evaluation was completed.

156.  The same day, Ms. Johnson was assessed by the wound care nurse who ordered Ms. Johnson's sacrum be x-rayed to determine the stage and depth of the sacral wound.

157.  On September 28, 2022, x-rays of the sacrum and coccyx indicated "no evidence for fracture or dislocation. No lytic or blastic area. Soft tissue defect with minor subcutaneous emphysema along the posterior margin of the sacral cortex. No focal osseous erosion, periosteal reaction, nor focal osteopenia. Incompletely visualized hip arthroplasty. Impressions: Sacral wound without radiographic evidence of acute osteomyelitis of the sacrum or coccyx."

158.  On October 3, 2022, Ms. Johnson had a diagnosis of abnormal weight loss.

159.  The same day, her wounds were documented as follows:

   a.  Upon belief, the sacral wound was unstageable and measured 3.2 cm x 0.8 cm

       x 0.5 cm with undermining of 1-2.5 cm.

   b.  Upon belief, the right heel, PVD, measured 0.2 cm x 0.1 cm.

160.  On October 5, 2022, she weighed 81 lbs.

30

161.    On October 11, 2022, Ms. Johnson exhibited behaviors that were normal for her including grabbing, pushing, and yelling.

162.    On October 17, 2022, Ms. Johnson's wounds were documented as follows:

    a.  Upon belief, the sacral wound was unstageable and measured 3.0 cm x 0.9 cm x 0.5 cm with undermining of 1-2.5 cm.

    b.  Upon belief, the right heel, PVD, measured 0.2 cm x 0.1 cm.

163.    On October 18, 2022, she complained of sacrum pain.

164.    On October 31, 2022, Ms. Johnson's wounds were documented as follows:

    a.  Unstageable Sacrum wound, measuring 3.0 x 0.8 x 0.5, in-house acquired, granulated tissue with depth/undermining, no odor, no erythema, no purulent drainage, no change. Upon belief, there was undermining of 1-2.5 cm.

    b.  Right heel, PVD, dry brown base, no drainage. Upon belief, the heel wound measured 1.0 cm x 0.5 cm.

165.    On November 1, 2022, she weighed 85.4 lbs.

166.    On November 3, 2022, she had a Braden Scale score of 10, indicating she was at a high risk for skin breakdown.

167.    On November 7, 2022, a Nursing Communication to Rehab form documented Ms. Johnson with a weight loss of "-6% in 1 mo unplanned" and she was being treated for dysphagia.

168.    On November 21, 2022, Ms. Johnson's wounds were documented as follows:

    a.  the sacral wound was unstageable and measured 3.0 cm x 0.6 cm x 0.7 cm, stage III, present upon admission on 3/14/2022.

    b.  A second measurement indicated the sacral wound measured 3.0 x 0.5 x 0.5 cm, with granulation, moderate SE drainage, maceration surrounding.

c. the right heel, PVD, measured 1.0 cm x 0.5 cm x 1.5, dry brown, no drainage, surrounding intact.

169. On November 28, 2022, Ms. Johnson's wounds were documented as follows:

a. the sacral wound was unstageable and measured 2.5 cm x 0.6 cm x 0.7 cm, stage III, present upon admission on 3/14/2022.

b. the right heel, PVD, measured 0.5 cm x 0.5 cm, dry brown, no drainage.

c. Left leg contracted.

170. On November 29, 2022, Ms. Johnson was reviewed by the IDT team for weight concerns and wound not improving. Her diet was modified to include fortified foods and a magic cup at 2 meals instead of the supplement shake.

171. On December 1, 2022, she weighed 82.2 lbs.

172. On December 5, 2022, Ms. Johnson's wounds were documented as follows:

a. the sacral wound was unstageable and measured 2.5 cm x 0.5 cm x 0.6 cm, stage III, present upon admission. with undermining of 1.5 cm – 2.5 cm, granulated tissue with depth/undermining, no odor, no erythema, no purulent drainage observed as a Stage III.

b. the right heel, PVD, measured 0.5 cm x 0.5 cm, dry brown, no drainage, dim distal pulses.

173. On December 19, 2022, Ms. Johnson's wounds were documented as follows:

a. Upon belief, the sacral wound was unstageable and measured 2.5 cm x 0.6 cm x 0.5 cm with undermining of 1.5 cm – 2.5 cm, granulated tissue with depth/undermining, no odor, no erythema, no purulent drainage observed as a Stage III.

32

b. Upon belief, the right heel, PVD, measured 0.5 cm x 0.5 cm, dry brown base, no drainage.

174. On December 21, 2022, the nurse practitioner assessed Ms. Johnson for a rash found during am care and ordered Benadryl.

175. On January 2, 2023, Ms. Johnson's wounds were documented as follows:

a. Upon belief, the sacral wound measured 2.8 cm x 0.5 cm x 0.5 cm with tunneling at 12:00 of 8.0 cm, at 6-12:00 of 4.0cm, and at 12:00 – 6:00 of 3.0cm, no odor, no erythema, no purulent drainage. Stage III.

b. Upon belief, the right heel, PVD, measured 0.5 cm x 0.5 cm, dry brown base, no drainage.

176. The same day, a discussion was held with Ms. Johnson's daughter about Ms. Johnson's slow decline, changes in her sacral wound, weight decline, and consideration of hospice services.

177. On January 5, 2023, Ms. Johnson's condition and hospice were discussed with her son. Hospice services were declined, and Ms. Johnson's son requested Ms. Johnson's Ativan medication to be discontinued due to increased sleepiness.

178. On January 6, 2023, Ms. Johnson was to remain on full code status.

179. On January 9, 2023, Ms. Johnson was documented with lower extremity contractures. She had a sacral wound measuring 2.5 x 0.5 x 0.5, in-house acquired with moderate serosanguineous drainage, tunnelling at 12:00 of 6.0 cm, undermining at 6:00 – 12:00 of 4.0cm and from 12:00-6:00 of 2.5 cm, and an unstageable right heel wound measuring 0.5 x 0.5, in-house acquired PVD with a dry brown base and no drainage. Additionally, her son requested to pursue a feeding to tube for Ms. Johnson.

180.    Also on January 9, 2023, Ms. Johnson was medicated for complaints of pain to her pressure wound area.

181.    On January 16, 2023, Ms. Johnson's wounds were assessed by the Wound Consultant Nurse Practitioner and documented as follows:

Site: Sacral R heel
Type of Wound: Pressure. PVD
Current Treatment: Calcium Alginate QD
Stage: US. NA
Length in cm: 2.5 cm 0.5 cm
Width in cm: 0.5 cm 0.5 cm
Depth in cm: 0.5 cm tunneling 12:00 of 7.0 cm, 6-12:00 of 4.0 cm ..
12:00-6:00 of 2.5 cm
Wound Base and Edges: Granulation. Dry brown
Drainage Type/Amount: Moderate SE. NA
Peri Wound Condition: Maceration Intact
Offloading: APM/heel lift boots

182.    On January 17, 2023, she weighed 83.5 lbs.

183.    On January 26, 2023, An aide was walking by Ms. Johnson's room and heard her saying, "come here baby." The aide went into Ms. Johnson's room and found her half on bed and half on the floor, on the left side of her bed by her nightstand. Her hips and feet were on the bed and her head was by the nightstand on the floor. No injuries were documented.

184.    On February 1, 2023, Ms. Johnson's daughter requested bed rails be placed on Ms. Johnson's bed.

185.    On February 2, 2023, she had a Braden Scale score of 13, indicating Ms. Johnson was at moderate risk of skin breakdown.

186.    On February 3, 2023, she was medicated for complaints of pain.

187.    On February 4, 2023, she weighed 84 lbs.

188.    On February 6, 2023, Ms. Johnson's wounds were assessed by the Wound Consultant Nurse Practitioner and documented as follows:

34

Site: Sacral R heel
Type of Wound: Pressure. PVD
Current Treatment: Calcium Alginate QD
Stage: US. NA
Length in cm: 2.5 cm 0.5 cm
Width in cm: 0.5 cm 0.5 cm
Depth in cm: 0.5 cm tunneling 12:00 of 7.8 cm, 6-12:00 of 3.0 cm ..
12:00-6:00 of 2.5 cm
Wound Base and Edges: Granulation. Dry brown
Drainage Type/Amount: Moderate SE. NA
Peri Wound Condition: Maceration Intact
Offloading: APM/heel lift boots

189.    On February 7, 2023, she suffered yet another fall. She was found on the right side of her bed with half her body on the bed. Her legs were on the bed and her back was on the floor. The bed was noted to be in the lowest position with bolsters attached to bed at the time of the fall. No injuries were noted.

190.    The same day, a second nursing note regarding Ms. Johnson's fall documented that Ms. Johnson was talking senselessly about things but not related to the fall and that fall mats would be placed beside the bed to help prevent injury.

191.    On February 9, 2023, Ms. Johnson was yelling out and attempting to lift her bottom to get off her wound. She was repositioned and offered distraction without effect. She was then medicated for pain with effect.

192.    On February 10, 2023, nursing staff document that Ms. Johnson looked uncomfortable, restless, was yelling out, and guarding her bottom lifting up off the bed. She was medicated for pain with effect.

193.    On February 12, 2023, Ms. Johnson's wounds were assessed by the Wound Consultant Nurse Practitioner and documented as follows:

Site: Sacral R heel
Type of Wound: Pressure. PVD
Current Treatment: Calcium Alginate QD

35

Stage: US. NA
Length in cm: 2.5 cm 0.5 cm
Width in cm: 0.5 cm 0.5 cm
Depth in cm: 1.0 cm tunneling 12:00 of 8.0 cm, 6-12:00 of 3.0 cm..
12:00-6:00 of 2.5 cm
Wound Base and Edges: Granulation. Dry brown
Drainage Type/Amount: Moderate SE. NA
Peri Wound Condition: Maceration Intact
Offloading: APM/heel lift boots

194.    On February 15, 2023, Kyle Bessemer, CRNP, assessed Ms. Johnson for routine follow up and increased behaviors. Ms. Johnson was noted to be screaming. It was further documented that Ms. Johnson's family requested to stop her anxiety medications because she was too lethargic. CRNP Bessemer further indicated that at the time of assessment Ms. Johnson was difficult to examine due to her advanced dementia and yelling. A psych follow up was ordered.

195.    The same day, Ms. Johnson continued to exhibit behaviors throughout the day.

196.    On February 17, 2023, progress notes documented "as per residents son, would like for resident to either get a lower dose of Ativan or get something different for her anxiety Residents son stated 'my mom is out of it and the meds make her drowsy even Tylenol makes her drowsy.' Nurse explained the behaviors as to why resident was given Ativan earlier today. And that the Ativan finally took effect."

197.    On February 18, 2023, nursing staff documented that "resident sacral noted to be larger, deep purple in color surrounding the wound bed, Boggy texture noted, with heavy serosanguineous drainage noted. Resident appears to be in more pain, PRN Tramadol administered and ineffective. CRNP NOP Williams notified w/N.O to start Doxy 100 mg BID x 7 days, N.O to culture sacral wound, N.O 2 view sacral x-ray to r/o osteomyelitis, N.O Stat Labs, CBC with diff, CRP, and SED Rate. CRNP Nop recommended for resident be sent to ER for elevated temp or for further tx d/t wound. Both RP parties Stephanie and Bill updated via telephone conversation. Both

36

parties in agreeance with Nop's orders as well as sending resident to hospital if needed. When this writer entered room to obtain culture of sacral wound, resident noted to be warm to touch registering at 100.8 temporal, wound noted to have heavy serosang drainage, and resident more lethargic than usual. Resident guarding sacrum during wound change and repositioning., and yelling out[] discomfort. On call, Dr. Julia in agreeance with CRNP recommendations and to send resident to ER if temp > 100.4."

198.    The same day, lab results revealed Ms. Johnson had high levels of WBC (15.8), Neutrophil (12.94), and IMM Gran Number (0.10), and low levels of RBC (3.63), Hemoglobin (10.8), Hematocrit (33.9), and Eosinophil (0.00).

199.    Also on February 18, 2023, pain medication was noted to be ineffective and Ms. Johnson had loose stools.

200.    On February 19, 2023, Ms. Johnson continued with increased pain. She continued to appear in more discomfort than usual, yelling and guarding her sacral area, and her wound continued with heavy serosanguineous drainage.

201.    On February 20, 2023, a culture grew out 3+ streptococcus species Group C, 2+ mixed gram negative rods, and 1+ mixed gram positive organisms, and repeat labs revealed Ms. Johnson had high levels of WBC (14.0), Neutrophil (9.71), and IMM Gran Number (0.08), and low levels of RBC (3.89), and hemoglobin (11.6).

202.    The same day, sacral x-ray results revealed deep sacral decubitus with associated soft tissue emphysema, erosion destruction of the distal sacrum and coccyx in keeping with sequeling of acute and/or chronic osteomyelitis. An order was placed to send Ms. Johnson to the ER.

203. Also on February 20, 2023, Ms. Johnson is documented with 2 episodes of loose stools.

204. Upon arrival at the ER, on February 20, 2023, Ms. Johnson's sacral wound was noted to be approximately the size of a baseball in circumference, malodorous, tunneling in areas, drainage and a strong odor, and she had a temperature of 103 F. She was admitted to Reading Hospital with a sacral wound and sepsis.

205. During hospitalization, radiology studies revealed that Ms. Johnson's upper coccyx/sacrum was compatible with osteomyelitis, and she had bladder wall thickening that correlated for cystitis. Ms. Johnson's family declined surgical wound treatment.

206. Ms. Johnson's hospital diagnosis further included sepsis due to Escherichia Coli, septic shock, stage 4 sacral ulcer, malnutrition, osteomyelitis, cachexia, BMI 19.9 or less, thrombocythemia, hypomagnesemia, and hyperkalemia.

207. Upon belief, during hospitalization a CT of Ms. Johnson's abdomen and pelvis area with contrast revealed "[f]airly extensive areas of subcutaneous emphysema posteriorly, involving the lower back and into the pelvic region, extending inferiorly and centrally to the level of the coccyx and into the right posterior upper extremity to the level the proximal femur. Several regions contain areas of fluid, likely associated abscesses with infection. Additionally, there is new destruction in the lower sacrum/upper coccyx, compatible with osteomyelitis, likely all secondary to a right-sided decubitus ulcer at the sacrum."

208. Also during hospitalization, Ms. Johnson's sepsis diagnosis was resolved with IV antibiotics. Her condition stabilized and she was discharged back to the Facility for wound care.

209.    On March 15, 2023, Ms. Johnson was readmitted to the Facility and had a diagnosis of right and left lower leg contractures, chronic osteomyelitis, and was to receive oxycodone for pain control every 6 hours and be monitored for pain every shift.

210.    Upon readmission, she was noted to appear comfortable but yelled out during repositioning. She was on a regular, purred diet with thin liquids and required staff assistance for feeding. She weighed 93.1 lbs. and had a Braden Scale score of 9, indicating she was at very high risk for skin breakdown. She had a stage IV sacral wound, measuring 9cm x 5.5 cm x 2 cm, tunneling 4 cm at 9:00, with a pink wound bed, moderate amount of yellow sloughy drainage, dark and soft surrounding skin. Additionally, she had contracture of the bilateral lower extremities and severe stiffness to her bilateral upper extremities.

211.    On March 17, 2023, she evaluated for rehabilitative needs by Richard Rosenstein who indicated that based on the recent hospital CT scans of her abdomen and pelvis, any attempts at ROM at Ms. Johnson's hips would be "fruitless and likely very painful."

212.    On March 18, 2023, Ms. Johnson's pain was noted to be worse during wound care and/or when care is being performed.

213.    On March 20, 2023, her stage IV sacral wound measured 11.0 x 9.0 x 1.0 with undermining from 9 – 1:00 of 4.0cm, bone palpable/exposed, 20% nonviable eschar, and no odor, erythema, or drainage. However, her wound dressing was soiled with stool. Additionally, her unstageable vascular right heel wound was noted to be intact.

214.    On March 21, 2023, Ms. Johnson was assessed by infectious disease and was started on Vantin 20 mg twice a day for 30 days and Doxycycline 100mg twice a day for 30 days for suppressive antibiotic therapy for her sacral wound. Additionally, she was ordered probiotics twice a day while taking the dual antibiotics.

39

215. The same day, she received the first dose of antibiotics without adverse reactions, and she had a small amount of brown/yellow drainage noted at dressing change to sacrum.

216. Also on March 21, 2023, she was noted to have a planned, desirable significant weight gain of 9.5 lbs. in one month and 13.3 lbs. in three months.

217. On March 22, 2023, Ms. Johnson's oxy solution was increased for a large quantity 3 times a day.

218. On March 24, 2023, Ms. Johnson was alert with confusion, appeared to be in pain and was medicated with oxycodone.

219. On March 26, 2023, Ms. Johnson was found laying on her left side in bed with upper body and head off the mattress with her lower body completely on the bed. Her bed was noted to be in low position. She was repositioned with assistance of 2 staff members and her bed bolsters were readjusted properly for safety.

220. The same day, there was a moderate amount of yellow, blood-tinged drainage present with Ms. Johnson's wound dressing change.

221. On March 27, 2023, her stage IV sacral wound measured 11.0 x 8.7 x 1.0 with undermining from 9 – 1:00 of 4.0cm, bone palpable/exposed, 80% granulation, 20% nonviable eschar, small serous drainage, periwound intact, and no odor. Further, she was on oxycodone for pain with good relief.

222. The same day, she had adequate appetite and hydration.

223. On March 29, 2023, she had a Braden Scale score of 13, indicating that she was at moderate risk of pressure ulcers and she had adequate appetite and hydration with staff assistance.

224. On March 30, 2023, her stage IV sacral wound measured 11.0 x 8.7 x 1.0. Her treatment was changed with no new concerns and she continued on oxycodone for pain.

40

225. On March 31, 2023, Ms. Johnson continued on medications for sacral wound and her sacral wound had no eschar, granulation or signs and symptoms of infection noted.

226. The same day, she was medicated for noted pain upon exertion.

227. On April 2, 2023, she weighed 92.9 lbs.

228. On April 3, 2023, she continued on antibiotics, "Doxy and Cefpodoxime" due to her sacral wound infections. She was turned and repositioned frequently for comfort. She had a poor appetite, having consumed only 25% of breakfast and lunch and her output decreased, at 100mL throughout shift.

229. The same day, she was medicated for pain.

230. Also on April 3, 2023, Ms. Johnson was assessed for a wound consultation at the request of the staff.  At that time, her sacral wound measured 11.5cm x 8.5cm x 1.0cm with undermining 9-1:00 of 4.0 cm, bone palpable/exposed, 80% granulation, 20% nonviable eschar, mall serous drainage with no odor, and the periwound was intact. It was a sage IV with osteomyelitis and had a large cavity with bone exposed. Also, she had a right heel area with a dry brown base and no drainage. Further, there was difficulty keeping Ms. Johnson's wound clean from feces and concern for stalled wound progress.

231. On April 4, 2023, and April 5, 2023, her oxycodone was held due to being asleep, lethargic and hard to arouse.

232. On April 5, 2023, Ms. Johnson continued on Doxy and Cefpodoxime without adverse reactions and her sacral wound had a moderate amount of yellow, blood-tinged drainage present with Ms. Johnson's wound dressing change. Further, she exhibited signs and symptoms of discomfort during dressing changes, including yelling, grabbing and scratching at staff.

233.     On April 9, 2023, Ms. Johnson's sacral wound continued with a moderate amount of yellow, blood-tinged drainage present with Ms. Johnson's wound dressing change. Further, she yelled and moaned in pain with wound care and repositioning.

234.     On April 10, 2023, Ms. Johnson weighed 93 lbs.

235.     The same day, a wound consultation conducted by CRNP Williams described Ms. Johnson's sacral wound as "Sacral. Pressure/OM.. 11.0 cm x 8.5 cm x 1.0 cm with undermining 9-1:00 of 4.0 cm, bone palpable/exposed, 80% granulation, 20% nonviable eschar, small serous, no odor, periwound intact."

236.     On April 12, 2023, Ms. Johnson was assessed by Infectious Disease for her sacral wound with osteomyelitis. Upon return to the Facility, she was noted to be in stable condition and was to continue Vantin and Doxy for suppressive antibiotics "[l]argely as a palliative measure only." It was suspected that she was at a very high risk of developing recurrent infection and would require re-hospitalization before long.

237.     On April 13, 2023, lab results revealed Ms. Johnson had low levels of Albumin (3.2), AT (12), ALT (<3), RBC (3.75), Hemoglobin (11.5), MCHC (30.9), and a high level of MCV (99.2).

238.     The same day, nursing progress notes revealed that Ms. Johnson's sacral wound had been irrigated, cleaned out during her infectious disease appointment. Her would appeared red and the sloughy areas were removed. She had moderate amount of yellow/blood tinged drainage present and a mild foul odor noted.

239.     On April 17, 2023, a wound consultation conducted by CRNP Williams described Ms. Johnson's sacral wound as a stage IV pressure ulcer with osteomyelitis and appeared as a large cavity with bone exposed, measuring 10.0 cm x 7.0 cm x 1.0 cm with undermining 9-1:00 of 4.0

cm, bone palpable/exposed, 85% granulation, 15% nonviable tanish slough, small serous drainage, no odor, no erythema, and the periwound was intact. Additionally, there was concern for stalled wound progress.

240. On April 23, 2023, Ms. Johnson's foley catheter was replaced due to dislodgement.

241. On April 24, 2023, nursing progress notes documented that Ms. Johnson was screaming and yelling out and that she was medicated with Oxy liquid with no positive results.

242. On April 27, 2023, Dr. Goldberg assessed Ms. Johnson as follows: "Patient continues to require total care for Alzheimer's. Unstageable sacral wound with underlying osteo is stable in size but odor noted. Slow healing because patient cannot comply with offloading secondary to dementia. She completed suppressive antibiotics. Will reculture due to odor…"

243. On April 29, 2023, the sacral wound culture returned with "3+ mixed enteric gram-rods and 2+ gram + organisms. Stain: Many Polymorphonuclear leukocytes, many gram neg rods, few gram positive rods." The on call Dr. Raptanni was updated and no new orders were given but Dr. Raptanni recommended to continue to monitor for signs and symptoms of infection and to forward the results to infectious disease.

244. On May 4, 2023, Ms. Johnson's stage IV sacral wound measured 10 x 7 x 1, with moderate serosanguineous drainage. Further, it was noted that infectious disease was aware of Ms. Johnson's recent wound culture results and recommended that Ms. Johnson continue on Doxycycline and Vantin for chronic suppressive and palliative treatment.

245. On May 7, 2023, Ms. Johnson weighed 74.8 lbs.

246. On May 8, 2023, orders were entered for Ms. Johnson to indefinitely continue taking Doxycycline and Cefpodoxime treatment.

247.    On May 18, 2023, Wound Healing Solutions assessed Ms. Johnson for follow-up management of chronic sacral wound stage IV with osteomyelitis, status post surgical debridement, followed by ID. Indefinite cefpodoxime and doxycycline antibiotics with a treatment of Vashe soak followed by calcium alginate with silver. Ms. Johnson was documented as difficult to offload and reposition due to severe dementia, contractures, and indwelling catheter. She was noted to cry out during repositioning. Her sacral wound measured 6.8cm x 4.5cm x 1.0cm with undermining at 12:00-6:00 of 3.0 cm, 6:00-12:00 of 1-2 cm, the wound base was 95% granular, 5% fibrinous with moderate nonodorous serous drainage, the periwound was without erythema, crepitus, edema or induration. Her bilateral heels were noted to be intact.

248.    On May 24, 2023, Ms. Johnson was assessed by Wound Health Solutions. Ms. Johnson's Stage IV sacral wound with osteomyelitis was assessed as a full thickness erosion of the sacrum measuring 6.0 cm x 5.0 cm x 1.0 cm with undermining at 12:00 – 6:00 of 3.0 cm, 6:00 – 12:00 of 1-2 cm. The wound base was 95% granular and 5% fibrous with moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration.

249.    On May 28, 2023, the sacral wound as documented with a moderate amount of thick yellow drainage and her appetite and hydration were adequate with staff feed.

250.    On May 31, 2023, Ms. Johnson was assessed by Wound Health Solutions. She was noted with a recent significant weight loss of 18.2 lbs. and staff reported a decreased appetite. Her sacral wound was assessed as a full thickness erosion of the sacrum measuring 7.0 x 6.0 cm x 1.0 cm with undermining at 12:00 – 6:00 of 3.0 cm, 6:00 – 12:00 of 1-2 cm. The wound base was 95% granular and 5% fibrous with moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional." Further, "analysis: OM, clean wound, on suppressive abx, significant weight loss of 19.9 lbs. since 3/15/23, incontinence

44

of bowel/bladder, contractures, immobility, failure to thrive all contributing factors of poor wound healing."

251. On June 2, 2023, Ms. Johnson's son was notified of residents decline and weight loss and indicated that he was considering hospice or comfort care.

252. On June 3, 2023, she weighed 73 lbs.

253. On June 4, 2023, Ms. Johnson verbalized pain during her 3-11 sacral wound treatment. She was medicated for pain with no positive effects. At that time, her sacral wound had minimal purulent drainage with scant bright red blood.

254. On June 7, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 8.0 x 8.0 cm x 1.5 cm with undermining at 12:00 – 6:00 of 3.0 cm, 6:00 – 12:00 of 2.0 cm. The wound base was 95% granular and 5% fibrous with moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional."

255. On June 14, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 8.0 x 7.0 cm x 2.0 cm with undermining at 8:00 – 4:00 of 4.0cm, wound base was 90% granular and 10% fibrous with moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional." Additionally, Family was to consider hospice.

256. The same day, Ms. Johnson's foley was pulled out during incontinence care and was reinserted.

257. On June 15, 2023, Dr. Goldberg assessed Ms. Johnson, and her plan of care was to include 24-hour supportive care and hospice. She was to continue local wound care. Her sacral

wound was noted as measuring 10 x 7 x 1 cm with undermining at 9-1 of approximately 4.5 cm and had palpable bone. Additionally, Ms. Johnson's family agreed to sign onto hospice.

258.   The same day, Ms. Johnson was admitted to Heartland Hospice Services with a diagnosis of Alzheimer's disease.

259.   On June 22, 2023, Dr. Goldberg assessed Ms. Johnson in relation to hospice and the plan of care was to include 24-hour supportive care and hospice. She was to continue local wound care and antibiotic treatment for her wound infection. Additionally, the goal of care was comfort as directed by hospice.

260.   On June 22, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 7.7 x 7.0 cm x 1.5 cm with undermining at 8:00 – 4:00 of 6.0 cm. The wound base was 90% granular and 10% fibrous with bone fragments palpable and moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional."

261.   On June 26, 2023, Ms. Johnson declined to wear her sling at times and she was educated on the need to wear it at all times.

262.   On June 28, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 7.7 x 7.2 cm x 2.0 cm with undermining at 8:00 – 4:00 of 6.0 cm (deepest at 4 o'clock). The wound base was 90% granular and 10% fibrous with bone fragments palpable and moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional." Further, the wound was a "[l]arge cavity stable wound."

263.   On July 3, 2023, nursing progress notes revealed Ms. Johnson continued to yell in pain with repositioning and dressing changes. Her sacral wound was red with yellow sloughy areas

46

and white tendon/bone exposed with a large amount of yellow blood-tinged drainage, no odor, tunneling that appeared to be increasing in size, and the surrounding skin appeared thin and boggy. A large amount of feces was observed in the wound bed. Additionally, her appetite and hydration were poor.

264. On July 5, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 8.0 x 6.8 cm x 2.0 cm with undermining at 8:00 – 4:00 of 6.0 cm (deepest at 4 o'clock). The wound base was 90% granular and 10% fibrous with bone fragments palpable and moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional." Further, the wound was a "[l]arge cavity stable wound."

265. The same day, she had increased pain with reposition and wound care, and her sacral wound bed was noted to be red with bone and tendon exposed with a moderate amount of yellow drainage and the surrounding skin was soft and thin.

266. On July 6, 2023, Ms. Johnson's son declined recommendations for Lorazepam relating to Ms. Johnson's restlessness and discussed hiring a caregiver to sit with Ms. Johnson as an alternative to continuing with hospice.

267. The same day, she was medicate for thrush and continued on antibiotics for her wound infection.

268. On July 11, 2023, Ms. Johnson's AM wound care was completed by the hospice nurse because she needed to measure Ms. Johnson's wound. No measures were documented in the Facility nursing notes for this day.

269. On July 12, 2023, Wound Healing Solutions assessed Ms. Johnson's sacral wound as a Stage 4, full thickness erosion of the sacrum measuring 8.0 x 8.2 cm x 2.0 cm with

undermining at 8:00 – 4:00 of 6.0 cm (deepest at 4 o'clock). The wound base was 90% granular and 10% fibrous with bone fragments palpable and moderate nonodorous serous drainage. The periwound was without erythema, crepitus, edema or induration. "[S]ize change due to positional." Further, the wound was a "[l]arge cavity stable wound."

270. The same day, Ms. Johnson was also assessed by CRNP Bessemer relating to hospice, anorexia and decline. CRNP Bessemer documented that Ms. Johnson weighed 66 lbs. on July 9, 2023, which was down from 77 lbs. on June 4, 2023. At that time, the plan of care was to provide 24-hour supportive care, hospice comfort care, continue local wound care and oral medications.

271. On July 14, 2023, her code status was changed to DNR/DNI/DNH.

272. On July 15, 2023, Ms. Johnson remained on antibiotics for chronic wound infection.

273. On July 20, 2023, at Ms. Johnson had increased, shallow respirations with periods of 15 second apnea. She was not responding to verbal stimuli and was moaning between breaths. Her eyes were open and fixed and her extremities were cold with discolored fingertips. Hospice and Ms. Johnson's family were contacted.

274. The same day, at approximately 10:01 a.m., with her children at her bedside, Ms. Johnson was observed without audible breath sounds and was pronounced.

275. Ultimately, Ms. Johnson did not recover from the injuries she suffered at Defendants' Facility, and she succumbed to those injuries on July 20, 2023.

276. Ms. Johnson's death certificate lists osteomyelitis and cerebral vascular disease as her immediate causes of death.

277.    Defendants were fully aware of Ernestine T. Johnson's medical history, medical conditions and co-morbidities and the level of nursing care she would require while a resident at the Facility.

278.    The medical record for Ernestine T. Johnson, while she was a resident at the Defendants' Facility, includes and evidences missing and incomplete documentation.

279.    The Defendants negligently caused severe injury to Ernestine T. Johnson when they: mismanaged the Facility; under-budgeted the Facility; understaffed the Facility; failed to train or supervise the Facility's employees; failed to provide adequate and appropriate healthcare as described herein; engaged in incomplete, inconsistent and fraudulent documentation; failed to develop an appropriate care plan; failed to ensure the highest level of physical, mental and psychosocial well-being; failed to supervise; failed to provide a safe environment; failed to prevent falls; failed to turn and reposition; failed to notify her physician of significant changes in condition; failed to care plan for her individualized needs; failed to send her to the emergency room promptly when necessary; failed to provide proper pain management; which, together, caused Ernestine T. Johnson to suffer multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

280.    As a result of the negligence, carelessness, and recklessness of the Defendants herein described, Ernestine T. Johnson was caused to suffer serious and permanent injuries as described herein, to, in and about her body and possible aggravation and/or activation of any pre-

existing conditions, illnesses, ailments, or diseases she had, and/or the accelerated deterioration of her health, physical, and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and more particularly, multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

## IV.    COUNT ONE

**Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased**
**v.**
**Defendants, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, New Premier Management, LLC, Yosef Gerson, Aharon Bleier, and Christopher M. Troutman, NHA ("Defendants")**

281.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

282.    Upon accepting Ernestine T. Johnson as a resident at the Facility, Defendants individually and jointly assumed direct, non-delegable duties to Ernestine T. Johnson to provide her with adequate and appropriate healthcare, as well as basic custodial and hygiene services, as set forth herein.

283.    If Defendants were unable or unwilling to meet the needs of Ernestine T. Johnson, they had an affirmative duty and legal obligation to discharge Ernestine T. Johnson from the Facility.

50

284.    Defendants owed a non-delegable duty to provide adequate and appropriate medical, skilled nursing, rehabilitation, physical therapy, occupational therapy, speech therapy, activities of daily living and other custodial care services and supervision to Ernestine T. Johnson and other residents at the Facility, such as reasonable caregivers would provide under similar circumstances.

285.    Defendants each owed a non-delegable duty to the Facility's residents, including Ernestine T. Johnson, to hire, train and supervise their employees so as to ensure that the Facility was operated, and services were provided to Defendants' residents in a safe and reasonable manner.

286.    Defendants, by and through their agents, employees, and/or servants each owed a duty of care to Ernestine T. Johnson to exercise the appropriate skill and care of licensed physicians, nurses, certified nurse aides, therapy providers, rehabilitation providers, dietary personnel, Directors of Nursing, and/or Nursing Home Administrators.

287.    Defendants each owed the following duties to Ernestine T. Johnson: the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; to select, train and retain only competent staff; to oversee and supervise all persons who practiced medicine, nursing, rehabilitation and/or therapy within the Facility; to staff the Facility with personnel at sufficient numbers and training to provide care and services to meet the needs of the residents; a duty to ensure the respect and dignity of the residents; the duty to adequately fund the Facility and not to under-budget for staffing and resources; to formulate, implement, update and enforce policies and procedures to ensure that all residents receive quality care as required by the applicable standards of care; a duty to take adequate measures to remedy known problems in the delivery of hygiene and custodial care as well as in the provision of medical, skilled nursing,

51

rehabilitation, occupation therapy and speech therapy; a duty to notify residents, their families and/or representatives of the fact that Defendants were unable to provide adequate care and services when Defendants knew, or should have known, of their deficiencies in providing such care and services; a duty to refuse to admit residents that Defendants knew or should have known they were unable to provide the necessary care and services required by the residents; a duty to not admit more residents than they could safely provide the necessary care and services for that the residents required; a duty to keep the Facility's residents free from abuse and neglect, including Ernestine T. Johnson.

288.    Defendants failed to uphold and fulfill the aforementioned duties which proximately caused severe injuries to Ernestine T. Johnson, as detailed herein.

289.    In addition to the direct acts and omissions of the corporate Defendants, the Defendants also acted through their agents, servants and employees, who were in turn acting within their course and scope of their employment under the direct supervision and control of Defendants.

290.    Upon present information and belief, at all times material hereto, Defendants authored, produced and/or received multiple and frequent reports detailing the number, frequency, factual circumstance and types of injuries, illnesses, and infections sustained by Ernestine T. Johnson and the other residents of the Facility.

291.    Despite being made aware of this information, including those specific to Ernestine T. Johnson, Defendants failed to take actions to prevent the occurrence of these types of injuries, illnesses, and infections including multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition;

malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

292.    Defendants knew, or should have known, of the aforementioned issues that were occurring with the care of Ernestine T. Johnson, as they were placed on actual and/or constructive notice of the same, through their own reports, CMS Quality Indicator Reports, CASPER Reports, and Federal and Pennsylvania Department of Health Surveys.

293.    Defendants, as the corporate members, managers, owners, and/or directors of the Facility, breached their duties and were, therefore, negligent, careless and reckless in their obligations to Ernestine T. Johnson.

294.    Defendants' corporate conduct was independent of the negligent conduct of the employees of the Facility, and was outrageous, willful and wanton and exhibited a reckless indifference to the health and well-being of the residents, including Ernestine T. Johnson.

295.    Defendants' breaches of duties, negligence, professional negligence, corporate negligence, carelessness and recklessness, individually, vicariously and/or acting by and through their officers, directors, members, managers, physicians, physicians' assistants, nurses, certified nurse aides, rehabilitation personnel, therapy personnel, dietary personnel, regional and corporate staff, who examined, treated and/or communicated the condition of Ernestine T. Johnson, and through the administrative personnel responsible for hiring, retaining and/or dismissing staff, staff supervision and policy making and enforcement, as well as any agents servants, employees, contractors, subcontractors and/or consultants of Defendants where exhibited in the following acts and omissions in the care and treatment of Ernestine T. Johnson.

296.    Defendants failed to hire, utilize, train and retain sufficient staff to meet the needs of the residents, including Ernestine T. Johnson, which caused Ernestine T. Johnson to suffer

multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

297.    Defendants failed to ensure that Ernestine T. Johnson did not needlessly suffer from preventable and treatable pain.

298.    Defendants failed to ensure that Ernestine T. Johnson received her physician-ordered medications in accordance with her physician's orders.

299.    Defendants failed to ensure that Ernestine T. Johnson received her physician-ordered treatments in accordance with her physician's orders.

300.    Defendants failed to timely and appropriately notify Ernestine T. Johnson's physician(s) and consulting specialists when she experienced significant changes in her condition, contributing to Ernestine T. Johnson's injuries and illnesses, including multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

301.    Defendants failed to obtain new or modified physician orders when Ernestine T. Johnson's changes in condition required the same.

302. Defendants failed to timely and appropriately notify Ernestine T. Johnson's family and personal representatives when she experienced significant changes in her condition, contributing to Ernestine T. Johnson's injuries and illnesses, including multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

303. Defendants failed to accurately and consistently document Ernestine T. Johnson's needs, and the care and services provided to her in response to such needs.

304. Defendants failed to prevent fraudulent documentation and allowing Defendants' staff to chart that they provided care to Ernestine T. Johnson on non-existent days, on days the charting staff member was not actually at work, and/or on day when Ernestine T. Johnson was not even in the Defendants' Facility.

305. Defendants failed to ensure that Ernestine T. Johnson did not develop serious and permanent injuries to, in and about her body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or disease she had, and/or accelerated the deterioration of her health, physical and mental condition, and more particularly, multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

306. Defendants failed to respond in a timely manner with appropriate medical, nursing, and custodial care when Ernestine T. Johnson was injured, including when she experienced multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

307. Defendants failed to ensure that each resident, including Ernestine T. Johnson, received, and that the Facility provided, the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.

308. Plaintiff believes and avers that Defendants' failures were caused by inadequate staffing levels, which are set by the corporate owners of the Facility, that is, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, New Premier Management, LLC, Yosef Gerson, and Aharon Bleier.

309. Plaintiff believes and avers that Defendants chose to operate and/or manage the Facility to maximize their profits at the expense of the care provided to their residents, including Ernestine T. Johnson, by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Ernestine T. Johnson.

310.    Defendants admitted residents with higher acuity and complex medical needs without increasing staffing levels.  Due to their higher acuity and complex medical needs, these residents require more hands-on care.

311.    Despite this increase in acuity, Defendants would not increase their staffing levels to reflect this need for additional care.

312.    As a result, the residents of Defendants' Facility, including Ernestine T. Johnson, were not provided adequate care and treatment to meet their needs, which resulted in Ernestine T. Johnson suffering multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

313.    Defendants failed to ensure Ernestine T. Johnson's comprehensive care plans were developed, reviewed, and updated as required by the standard of care, including with significant changes in condition.

314.    Defendants failed to develop and implement an appropriate, comprehensive and individualized care plan for Ernestine T. Johnson that included measurable objectives and timetables to meet her medical, nursing, custodial, mental, and psychosocial needs as identified in the comprehensive assessment.

315.    Defendants failed to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident, including Ernestine T. Johnson.

57

316.    Defendants failed to oversee and supervise all persons who practiced medicine, skilled nursing, rehabilitation, occupation therapy, speech therapy, dietary services and custodial care in the Facility who failed to provide adequate and appropriate healthcare to prevent Ernestine T. Johnson from suffering multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

317.    Defendants failed to formulate, implement, and enforce adequate policies and procedures to prevent Ernestine T. Johnson from suffering multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

318.    Defendants failed to refer Ernestine T. Johnson to the necessary medical specialists in a timely manner who would have properly diagnosed and/or treated her condition.

319.    Defendants failed to implement a budget that properly funded the Facility and allowed the Facility to provide adequate and appropriate healthcare to its residents, including Ernestine T. Johnson, necessarily including staffing and supplies.

320.    Defendants grossly and recklessly understaffed the Facility.

321.    Defendants failed to take necessary and appropriate steps to remedy the continuing problems at the Facility that the Defendants knew, or should have known, were occurring with Ernestine T. Johnson's care, which included the need to increase the number of employees, hiring skilled and/or trained employees, providing adequate training to the employees, monitoring the conduct of the employees, and/or changing policies and procedures to improve resident care.

322.    Plaintiff believes and avers that Defendants chose to operate and/or manage the Facility to maximize their revenue at the expense of the care provided to their residents, including Ernestine T. Johnson, by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Ernestine T. Johnson.

323.    Due to the insufficient staffing levels, Ernestine T. Johnson suffered injuries, which included multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition; malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

324.    There were not sufficient staff members to adequately provide the care and treatment prescribed by the physicians to Ernestine T. Johnson, which caused her to suffer all of the injuries described herein, including multiple falls; development and/or worsening of wounds, including an unstageable/Stage 4 sacral wound, right and left buttock wounds, right and left heel wounds, MASD, and rash; infections, including right hip surgical wound infection, E.Coli, sepsis, osteomyelitis; lower extremity contractures; dehydration; protein-calorie malnutrition;

malnutrition; hyperosmolality; hypernatremia; hypovolemia; hypokalemia; hypomagnesemia; cachexia; acidosis; ascites; weight loss; poor hygiene; severe pain; and death.

325. Defendants failed to maintain compliance with the governmental regulations, including 42 C.F.R. § 483.1 *et seq.* and Title 28 Pa.Code § 201.1 *et seq.*, to which Defendants are required to adhere and to which their delivery of care is compared during Federal and Pennsylvania Department of Health Annual and Complaint-based surveys, including 42 C.F.R. §§ 483.21(a) & (b), 483.25(b) & (c), 483.10(a) & (e) & (c) & (g), 483.10(c)(2)(iv), 483.10(i), 483.12, 483.10(g)(14), 483.15, 483.20, 483.20(b)(2)(ii), 483.24, 483.25, 483.60, 483.30, 483.35, 483.70; 483.70(e); 483.70(i); 483.10(f) & (h); 483.25(e), 483.25(b) & (c), 483.25 (d), 483.25 (g), 483.40; 483.45(b) & (c) & (e) & (d); 483.45(f), 483.80, and, 28 Pa.Code §§ 201.29, 211.5(f); 211.10, § 211.11, 201.29(j) & (i), 205.1, 211.8; 201.29(c), 51.3, 201.14(c), 211.2, 211.2(a), 211.5, 211.6, 211.2(a), 211.10(a), 211.12, 211.5, 211.7, 201.18; 201.20, 211.10(d).

326. In committing the acts and omissions herein, Defendants acted in a grossly negligent manner, with reckless indifference to the rights and safety of Ernestine T. Johnson.

327. Upon information and belief, Defendants owners, officers, directors, partners, members and managers were made aware of the Federal and Pennsylvania Department of Health survey results and placed on notice of the care issues and/or physical/environmental issues of their nursing homes, including the Facility.

328. Upon information and belief, Defendants, including their owners, officers, directors, partners, members, managers and employees, knew they had been cited by the Federal and Pennsylvania Department of Health surveyors for deficiencies regarding the Facility prior to, during and after the residency of Ernestine T. Johnson, and were placed on notice as to care issues and/or physical/environmental issues at the Facility.

329.    As a direct and proximate result of Defendants' acts and/or omissions, and their breach of their duty of care, negligence, carelessness and recklessness, Ernestine T. Johnson suffered (a) severe permanent physical injuries resulting in severe pain, suffering and disfigurement (b) mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity, (c) loss of capacity for enjoyment of life, (d) expense of otherwise unnecessary hospitalizations, medical expenses and residency at the Facility, (e) aggravation of her pre-existing medical conditions, (f) severe pain, (g) and death.

330.    In causing the aforementioned injuries, Defendants knew, or should have known, that Ernestine T. Johnson would suffer such harm.

331.    Defendants' conduct was intentional, outrageous, willful and wanton, and exhibited a reckless indifference to the health and well-being of Ernestine T. Johnson.

332.    Defendants' conduct justifies an award of punitive damages.

**WHEREFORE**, Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased, respectfully requests that judgment be entered in their favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury trial is demanded.

## V.    COUNT TWO

**Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased**
**v.**
**Christopher M. Troutman, NHA**

333.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

61

334.   Plaintiff would show that Defendant Christopher M. Troutman, NHA, at times relevant hereto, repeatedly, negligently, and knowingly failed to conform to the minimum standards of acceptable and prevailing practice and the standard of a reasonably prudent Nursing Home Administrator. One or more of Defendant Christopher M. Troutman's failures and violations of the standards singularly and collectively amounted to negligence and was a cause of Ernestine T. Johnson's serous injuries and the resulting damages in this case, as described throughout this Amended Complaint.

335.   Ernestine T. Johnson did not bring an action for any of these injuries or damages during her lifetime.

**WHEREFORE**, Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased, respectfully requests that judgment be entered in their favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury trial is demanded.

## VI.    <u>COUNT THREE</u>

**Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased**
**v.**
**Defendants, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, New Premier Management, LLC, Yosef Gerson, Aharon Bleier, and Christopher M. Troutman, NHA ("Defendants")**

336.   Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

337.    Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. 8302, also known as the Survival Statute, to recover all damages legally appropriate thereunder.

338.    Plaintiff's decedent, Ernestine T. Johnson, did not bring any action during her lifetime, nor has any other action been commenced on behalf of the Deceased against Defendants herein other than the instant matter.

339.    The following persons are entitled to share under this cause of action in the estate of said Decedent: The Estate of Ernestine T. Johnson.

340.    Plaintiff hereby claims damages for the pain, suffering, and inconvenience suffered by Plaintiff's decedent, Ernestine T. Johnson, up to and including the time of her death, all of which was caused by Defendants' breach of duties, negligence, carelessness, and recklessness.

341.    Plaintiff also hereby claims any and all damages for the fright and mental suffering attributable to the peril leading to the death of Plaintiff's decedent, Ernestine T. Johnson, all of which was caused by Defendants' breach of duties, negligence, carelessness, and recklessness.

**WHEREFORE**, Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased, respectfully requests that judgment be entered in their favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury trial is demanded.

## VII.    COUNT FOUR

**Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased**
**v.**

**Defendants, WYM Op Holdings, LLC d/b/a Wyomissing Health and Rehabilitation Center, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, New Premier Management, LLC, Yosef Gerson, Aharon Bleier, and Christopher M. Troutman, NHA ("Defendants")**

342.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

343.    Defendants contributed to and/or caused the death of Plaintiff's decedent, Ernestine T. Johnson, through their own negligence, carelessness, and reckless conduct as well as through their agents, servants, and/or employees.  As a result, Ernestine T. Johnson died on July 20, 2023.

344.    Plaintiff's decedent, Ernestine T. Johnson, did not bring any action during her lifetime, nor has any other action been commenced on behalf of the Deceased against Defendants herein other than the instant matter.

345.    Plaintiff's decedent, Ernestine T. Johnson, left the following survivors: Stephanie Purifoy-Harvey (daughter), Billy Purifoy (son), Reginald Purifoy (son) and Rodney Purifoy (son).

346.    Plaintiff Stephanie Purifoy-Harvey, daughter of Ernestine T. Johnson, was appointed Executrix of the Estate of Ernestine T. Johnson on July 17, 2024, by the Register of Wills of Berks County, Pennsylvania.

347.    Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. 8301, known as the Wrongful Death Statute, to recover any and all damages legally appropriate hereunder.

348.    The following persons have independent causes of action and are entitled to recover as Wrongful Death beneficiaries of the Decedent: Stephanie Purifoy-Harvey (daughter), Billy Purifoy (son), Reginald Purifoy (son) and Rodney Purifoy (son).

349.    Plaintiff, and the aforementioned Wrongful Death beneficiaries, claim damages for the pecuniary loss suffered by the decedent's survivor as a result of the death of Ernestine T.

64

Johnson as well as for the reimbursement of hospital, nursing, medical, and funeral expenses, and the expenses of administration necessitated by reason of Ernestine T. Johnson's injuries, which caused her death, and other expenses incurred in connection therewith.

350.    Additionally, as a result of Ernestine T. Johnson's death, the Wrongful Death beneficiaries have been deprived of the care, comfort, companionship, society, tutelage, and assistance they would have received from Ernestine T. Johnson had she lived the remainder of her natural life.

**WHEREFORE**, Plaintiff, Stephanie Purifoy-Harvey, as Executrix of the Estate of Ernestine T. Johnson, deceased, respectfully requests that judgment be entered in their favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury trial is demanded.

Respectfully submitted,

**McELDREW PURTELL**

*/s/ Ian T. Norris*

Dated: <u>12/27/2024</u>                          BY:  _____

Ian T. Norris, Esquire
Attorney Identification No. 207566
123 S. Broad St., Suite 2250
Philadelphia, PA 19109
Tel. No. (215) 545-8800
Email: inorris@mceldrewpurtell.com
*Attorney for Plaintiff*

**VERIFICATION**

The undersigned, having read the attached Amended Complaint, verifies that the within this Amended Complaint is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. The language of the Amended Complaint is that of counsel and not the signer. Signer verifies that signer has read the within Amended Complaint and that it is true and correct to the best of signer's knowledge, information and belief. To the extent that the contents of the Amended Complaint are not that of signer, signer has relied upon council in taking this Verification. This Verification is made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

Date: ___12/16/2024___

By: _____
Stephanie Purifoy-Harvey, as Executrix
of the Estate of Ernestine T. Johnson,
deceased

## CERTIFICATE OF SERVICE

I, Ian T. Norris, Esquire, attorney for Plaintiff, attest and certify that a copy of *Plaintiff's*

Amended *Complaint* was served on the date listed below via electronic filing system upon the

following:


John C. Farrell, Esquire
Elizabeth A. Underwood, Esquire
Stephen E. Purcell, Esquire
Marshall Dennehey, P.C.
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(Attorneys for Defendants WYM OP Holdings, LLC d/b/a Wyomissing Health Rehabilitation
Center, Premier Healthcare, LLC a/k/a Premier Healthcare Management, LLC, Yosef Gerson,
and Aharon Bleier)

Jill A. Guldin, Esquire
Pierson Ferdinand, LLP
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(Attorney for New Premier Management, LLC)


And


To be served via Process Server

Christopher M. Troutman
23 E. 6th St., Apt. 4
Pottstown, PA 19464-5200


Dated: 12/27/24          BY:    */s/ Ian T. Norris*
_____
Ian T. Norris
*Attorney for Plaintiff*